UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ESTATE OF ADELE LEVENTHAL BY BARRY
BERNSTEIN, *as Executor*,

                                    Plaintiff,

            – against –

WELLS FARGO BANK, N.A.,

                                    Defendant.

**<u>OPINION AND ORDER</u>**

14 Civ. 8751 (ER)

<u>RAMOS, D.J.:</u>

        The Estate of Adele Leventhal ("Plaintiff"), brings suit seeking injunctive and monetary

relief against Wells Fargo Bank, N.A. ("Defendant") in connection with two reverse mortgage

loan agreements executed by the late Adele Leventhal ("Ms. Leventhal"), her husband, Sidney

Leventhal ("Mr. Leventhal"), and Defendant.[1]  Plaintiff claims that Mr. Leventhal, who signed

the loan agreements both on behalf of himself and Ms. Leventhal, lacked a valid power of

attorney to bind his wife.  Consequently, Plaintiff asserts claims for breach of contract,

negligence, and fraud against Defendant, along with violations of the National Housing Act and

its implementing regulations.  Defendant moves to dismiss the Complaint pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, seeks a transfer of venue

---

[1] The Second Circuit has defined a reverse mortgage loan as follows:

> A reverse mortgage loan is a means by which an individual, usually an elderly
> person, may borrow on the equity of his or her home, and the lender pays out so
> much of the loan proceeds as necessary, in agreed periodic installments over the
> individual's lifetime. The mortgage debt becomes due when the borrower either
> sells the property or dies, whichever occurs first.

*Wolfert ex rel. Estate of Wolfert v. Transamerica Home First, Inc*., 439 F.3d 165, 166-67 (2d Cir. 2006).

to Florida state court.  For the reasons set forth below, Defendant's motion to transfer venue is DENIED and its Rule 12(b)(6) motion is GRANTED.

## I.    Background[2]

Mr. and Ms. Leventhal were the owners of a condominium ("the Property") located in North Miami Beach, Florida.[3]  Compl. ¶ 7.  In July 1994, Ms. Leventhal experienced a massive stroke that left her unable to speak or write.  *Id.* ¶¶ 5, 23-24.  It also significantly impaired her comprehension skills.  *Id.*  Approximately four months later, on November 9, 1994, a power of attorney was executed appointing Mr. Leventhal as Ms. Leventhal's attorney-in-fact.  *Id.* ¶ 6; Napierala Decl., Doc. 18, Ex. 6.  According to the document, Ms. Leventhal authorized Mr. Leventhal to take a number of stipulated actions on her behalf, including "borrow monies in [her] name, and to mortgage any real property or pledge personal property which [she] may own as security for monies borrowed."  *See* Napierala Decl., Doc. 18, Ex. 6.  It also gave Mr. Leventhal the power to "execute a deed and supporting documents" to convey the Property and "to receive the proceeds of such sale[.]"  *Id.*

Although it was not signed by Ms. Leventhal, the power of attorney agreement contained her printed initials, along with the signatures of two witnesses.  *See id.*  It was notarized and prepared by one of the witnesses, Leon Bedrick, of North Miami Beach, Florida.  *Id.*  The power

---

[2] The following factual background is based on the allegations in the Complaint, Doc. 1, Ex. A, which the Court accepts as true for purposes of the instant motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  In addition, it cites documents which are incorporated by reference or subject to judicial notice.  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (incorporation by reference); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991) (judicial notice).

[3] The Complaint does not state when Mr. and Ms. Leventhal acquired the Property.

of attorney was ultimately recorded nearly ten years later, on July 9, 2004 in Miami-Dade

County, Florida, along with an affidavit by Mr. Leventhal attesting to the following:

> To the best of Affiant's knowledge after diligent search and inquiry:
>
> a.   The Principal is not deceased, has not been adjudicated incapacitated, and has not revoked, partially or completely terminated, or suspended the Durable Power of Attorney; and
>
> b. A petition to determine the incapacity of or to appoint a guardian for the Principal is not pending.

*Id.*, Exs. 6-7.

On July 23, 2004, Mr. and Ms. Leventhal were named as borrowers in a reverse mortgage

agreement with Defendant.  Compl. ¶ 8.   The agreement states that "Borrower does hereby

mortgage, grant and convey to Lender" the Property, referred to as the "Admiral's Port

Condominium."  Napierala Decl., Doc. 18, Ex. 8.  Mr. Leventhal executed the security

agreement, with a principal amount of $68,832.84, on behalf of himself and Ms. Leventhal, as

her attorney-in-fact.[4]  Compl. ¶¶ 8-9; *see also* Napierala Decl., Doc. 18, Ex. 8.  Based on

Defendant's appraisal, the Property was worth $329,000.  *Id.* ¶ 26.  Plaintiff maintains it was

actually worth much less at the time of the appraisal, and continues to be as of the date of the

filing of the Complaint.  *Id.*

On February 12, 2007, the same parties entered into another reverse mortgage agreement

which increased the principal amount of the loan to $142,341.85.[5]  Compl. ¶ 10; *see also*

---

[4] The security instrument states that the principal actually totaled $108,784.32 and that the document was executed on June 30, 2004.  *See* Napierala Decl., Doc. 18, Ex. 8.  Regardless, the loan amount and date of execution are irrelevant for the purposes of the instant motion.

[5] The security instrument again reflects a different principal amount of $213,512.77.  Napierala Decl., Doc. 18, Ex. 9.

Napierala Decl., Doc. 18, Ex. 9.  Once again, Mr. Leventhal signed the agreement on behalf of himself and his wife, using his power of attorney.  *Id.* ¶ 11.  Both security instruments contained the following choice-of-law provision:  "This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located."  Napierala Decl., Doc. 18, Ex. 8 at ¶ 13; *id.*, Ex. 9 at ¶ 13.  They both specify that all sums "shall be immediately due and payable" if:  (1) one of the borrowers dies while the Property is not the principal residence of the other borrower; (2) the Property ceases to be the principal residence of the borrowers; or (3) one of the borrowers fails to physically occupy the residence for a period longer than twelve consecutive months while it is not the principal residence of the other borrower.  *Id.*, Ex. 8 at ¶ 15(A)-(B), Ex. 9 at ¶ 15(A)-(B).  In addition, the reverse mortgage loan agreements were notarized by Florida notary publics and recorded in Miami-Dade County on July 9, 2004 and March 23, 2007, respectively.  *Id.*, Exs. 8-9.

In connection with the second reverse mortgage loan, Defendant arranged for an interview with the borrowers by an individual named Willima C. Taylor ("Ms. Taylor"), conducted on January 8, 2007.[6]  Compl. ¶ 17.  Plaintiff alleges that Ms. Leventhal was incapable of comprehending complicated financial transactions, and could not ask any questions concerning the reverse mortgage since she was unable to speak or otherwise communicate.  *Id.* ¶ 20.  The Complaint also references a Certificate of Home Equity Conversion Mortgage ("HECM") Counseling, signed by an individual named Kim Aszli ("Ms. Aszli"), stating that a

---

[6] The Complaint does not specify whether Ms. Taylor was an employee of Defendant, or whom she otherwise represented.

one-hour telephone interview took place on December 12, 2006.[7]  *Id.* ¶ 22.  The Complaint submits that this interview could not have taken place because Ms. Leventhal was unable to speak, and notes that the certificate was not signed by the borrowers.  *Id.*

Mr. Leventhal died in January 2009, followed by Ms. Leventhal, who died on February 15, 2012.  Compl. ¶¶ 3, 13; *see also* Napierala Decl., Doc. 18, Ex. 12.  On October 21, 2014, Defendant filed an action to foreclose on the Property in the Eleventh Judicial Circuit of Florida, Miami-Dade County.  Napierala Decl., Doc. 18, Ex. 11.  Ms. Leventhal's son, Barry Bernstein ("Mr. Bernstein") is the executor of her estate and brought this action on its behalf on October 17, 2014.[8]  Compl. ¶ 1.  In addition to punitive damages, the Complaint seeks cancellation of the power of attorney and reverse mortgage loan agreements.  *Id.* ¶¶ 33-34, 38.  It also asks the Court to enjoin Defendant from "taking any action against the Estate of Adele Leventhal, including any action or proceeding against any of the property of the Estate . . . [or] with respect to the Note and the Reverse Mortgage."  *Id.* ¶¶ 31.  Defendant removed this action to this Court on November 3, 2014, on grounds of diversity of citizenship pursuant to 28 U.S.C §§ 1332, 1441, and 1446.  *See* Notice of Removal, Doc. 1.

## II.   Legal Standard

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The court is

---

[7] Once again, the Complaint does indicate whom Ms. Aszli was employed or contracted by, nor does it provide any additional details concerning the contents of the Certificate of HECM counseling, including who was present during the telephone interview.

[8] At the time of the filing of the Complaint, the Estate of Adele Leventhal was being probated in the Surrogate's Court, New York County.  Compl. ¶ 2.

not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiff's claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

On a motion to dismiss, the Court may consider a document that is attached to the complaint, incorporated by reference, or integral to the complaint, provided there is no dispute regarding its authenticity, accuracy or relevance. *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d

104, 111 (2d Cir. 2010) (citations omitted).  "To be incorporated by reference, the [c]omplaint must make a clear, definite and substantial reference to the documents."  *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 691 (S.D.N.Y. 2011) (internal quotation marks and citation omitted).  A court may also take into account matters of which judicial notice can be taken.  *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)); *see also* Fed. R. Evid. 201.  Accordingly, it is routine for courts to take judicial notice of court documents, "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

The Complaint expressly relies on three documents, thereby incorporating them by reference:  (1) the power of attorney agreement; (2) the 2004 reverse mortgage loan agreement; and (3) the 2007 reverse mortgage loan agreement.  Compl. ¶¶ 6, 8, 10; *see also* Napierala Decl., Doc. 18, Exs. 6, 8-9.  All of these documents are also publicly filed and subject to judicial notice.[9]  Moreover, the Court will take judicial notice of the following public documents: (1) Mr. Leventhal's affidavit in support of durable power of attorney, filed in the Public Records of Miami-Dade County, Florida; (2) the docket from the foreclosure action Defendant filed in connection with the Property in Florida state court; and (3) Mr. Bernstein's affidavit certifying the date of Ms. Leventhal's death filed in New York State Surrogate's Court for New York County.  Napierala Decl., Doc. 18, Exs. 7, 11, 12.  As for any additional documents provided by Defendant, they are either unnecessary or irrelevant to this Court's analysis.

---

[9] The three documents were filed in the Public Records of Miami-Dade County, Florida.  *See* Napierala Decl., Doc. 18 ¶¶ 8, 11-12.  The Court takes judicial notice of the Miami-Dade County Recorder's Official Record search results, accessible at https://www2.miami-dadeclerk.com/officialrecords/ (last visited Sept. 24, 2015).

III.     **Discussion**

**A. Venue**

"[I]t is fundamental that a court should resolve issues of jurisdiction and venue before addressing merits-based arguments[.]"  *de Ratafia v. Cnty. of Columbia*, No. 12 Civ. 5457 (LAP) (DCF), 2013 WL 603128, at *2 (S.D.N.Y. Feb. 7, 2013) (citing *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963)).  Therefore, the Court will first turn to Defendant's motion to transfer venue.

Defendant moves under 28 U.S.C. § 1404(a) to transfer the case to the Eleventh Judicial Circuit of Florida, Miami-Dade County, where the foreclosure action on the Property is currently pending.  *See* Def.'s Mem. L. Mot. Dismiss, Doc. 17 at 16-20; *see also* Def.'s Reply, Doc. 20 at 9-10.  Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  The Supreme Court has observed that, "by its very terms, [§1404(a)] speaks to federal courts; it addresses itself only to that federal forum in which a lawsuit has been initiated; its function is to vest such a federal forum with the power to transfer a transitory cause of action to a more convenient *federal* court."[10]  *Pope v. Atl. Coast Line R. Co.*, 345 U.S. 379, 384 (1953) (emphasis added).  Since then, it has been well-settled that "the federal statute concerning transfer of venue, 28 U.S.C. § 1404, only permits transfers between certain federal courts, and does not allow for transfers between federal and state courts."  *Chan v. Chan*, No. 13 Civ. 3331 (CBA) (VMS), 2015 WL 4042165, at *3 (E.D.N.Y. July 1, 2015) (listing

---

[10] The Supreme Court made this statement in reference to a case dealing with whether §1404(a) implicitly grants broad powers to state courts.  *See Pope*, 345 U.S. at 383-84.

cases); *see also E. Sav. Bank, FSB v. Estate of Kirk ex rel. Kirk*, 821 F. Supp. 2d 543, 546 n.1 (E.D.N.Y. 2011) ("[T]he federal change of venue statute, 28 U.S.C. § 1404(a), does not vest [the federal court] with any authority to transfer this case to the [New York State] Surrogate's Court.").

Without deciding the issue, the Court notes that various factors weigh in favor of transferring this action to another *federal* district court in the Southern District of Florida.[11] Most notably, it is the jurisdiction within which the property is located.  *See* Compl. ¶ 7.  In addition, all of the operative documents were notarized and recorded in Florida, *see* Napierala Decl., Doc. 18, Exs. 6-9, and the reverse mortgage security instruments are governed by Florida law.  *See id*., Ex. 8 at ¶ 13, Ex. 9 at ¶ 13.  Finally, there is a related foreclosure proceeding underway in Florida state court.  *Id*., Ex. 11.

However, although a court can *sua sponte* transfer a case on its own initiative, it should "allow the parties to present their views" before doing so.  *Ritchie Capital Mgmt., L.L.C. v. JPMorgan Chase & Co*., 532 B.R. 461, 471 (S.D.N.Y. 2014) (internal citation and quotation

---

[11] "In deciding motions to transfer venue under § 1404(a), courts inquire, first, whether the action could have been brought in the transferee district and, if yes, whether transfer would be an appropriate exercise of the Court's discretion." *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc*., 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013) (internal quotation marks and citation omitted).  Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]"  28 U.S.C. § 1391(b)(2).  In determining whether a transfer of venue constitutes a valid exercise of discretion, courts weigh the following factors:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Everlast*, 928 F. Supp. 2d at 743 (citations omitted).

marks omitted).  Defendant did not request that the case be transferred to the Southern District of

Florida, nor did it otherwise brief the issue.  Moreover, this Court is not inclined to transfer this

case to another federal judicial district, absent a specific request by one of the parties.  To the

extent that Defendant may wish to file an application for transfer of venue at some later date, it is

reminded that "the timing of a motion to transfer venue, although not by itself normally

dispositive, is relevant."  *Commercial Union Ins. Co. v. Emery Air Freight Corp.*, No. 92 Civ.

6513 (LMM), 1995 WL 232757, at *1 (S.D.N.Y. Apr. 19, 1995) (citations omitted).

In sum, because § 1404(a) only allows for transfers between federal courts, Defendant's

request to transfer this action to the Eleventh Judicial Circuit of Florida must be denied.

## B.  Choice of Law

Defendant removed this action from state court on the basis of diversity of citizenship

pursuant to 28 U.S.C. § 1332.  *See* Doc. 1 ¶¶ 7-9.  Plaintiff does not contest the Court's subject

matter jurisdiction.  A federal court sitting in diversity applies the choice-of-law rules of the

forum state.  *Dessert Beauty, Inc. v. Platinum Funding Corp.*, 519 F. Supp. 2d 410, 418-19, 419

n.61 (S.D.N.Y. 2007) (citing *White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 284

(2d Cir. 2006)).  "In New York, the forum state in this case, the first question to resolve in

determining whether to undertake a choice of law analysis is whether there is an actual conflict

of laws."  *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001) (internal

quotation marks and citation omitted).  There is an "actual conflict" when "the applicable law

from each jurisdiction provides differing rules that have the potential to affect the outcome of the

case significantly."  *Horton v. Greenwich Hosp.*, No. 12 Civ. 4436 (ALC) (RLE), 2014 WL

10

956468, at *2 n.1 (S.D.N.Y. Mar. 10, 2014) (citing *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 331 (2d Cir. 2005)).

New York courts conduct the choice-of-law analysis separately for each claim under a doctrine called dépeçage.  *2002 Lawrence R. Buchalter Alaska Trust v. Philadelphia Fin. Life Assur. Co.*, No. 12 Civ. 6808 (KMK), 2015 WL 1455805, at *8 (S.D.N.Y. Mar. 31, 2015) (citation omitted).  Pursuant to that doctrine, "the rules of one legal system are applied to regulate certain issues arising from a given transaction or occurrence, while those of another system regulate the other issues."  *Id.* (internal quotation marks and citation omitted); *see also Hutner v. Greene*, 734 F.2d 896, 901 (2d Cir. 1984) (applying California law in determining whether the plaintiff was required to obtain a broker's license, while applying New York law to other aspects of the contract dispute between the parties).  Here, Defendant argues that *all* of Plaintiff's claims are both procedurally and substantively governed by Florida state law.  *See* Doc. 17 at 6, 8.  Conversely, Plaintiff maintains that its claims are covered by New York law. Pl.'s Mem. L. Opp., Doc. 19 at 6-7.  Accordingly, this Court will follow the dépeçage doctrine and "conduct the choice-of-law analysis separately for each of  . . . Plaintiff['']s claims."[12]  *See Philadelphia Fin. Life Assur.*, 2015 WL 1455805, at *8 (quoting *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 169 (2d Cir. 2012)) (internal quotation marks omitted).

## C.  Statute of Limitations

"A motion to dismiss on statute of limitations grounds generally is treated as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6)."

---

[12] The Court notes, however, that Florida and New York laws are nearly identical with respect to the issues raised by the instant motion.

*Id.* at \*9 (quoting *Nghiem v. U.S. Dep't of Veterans Affairs*, 451 F. Supp. 2d 599, 602 (S.D.N.Y. 2006) *aff'd*, 323 F. App'x 16 (2d Cir. 2009)) (internal quotation marks omitted).  Given that Defendant bears the burden of establishing the expiration of the statute of limitations as an affirmative defense, "a pre-answer motion to dismiss on this ground may be granted only if it is clear on the face of the complaint that the statute of limitations has run."  *Fargas v. Cincinnati Mach., LLC*, 986 F. Supp. 2d 420, 427 (S.D.N.Y. 2013) (citing *Staehr v. Hartford Fin. Servs. Grp., Inc*., 547 F.3d 406, 425 (2d Cir. 2008)); *see also Ellul v. Congregation of Christian Bros*., 774 F.3d 791, 798 n.12 (2d Cir. 2014) ("Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint.").

The Court cannot decide whether Plaintiff's claims are time-barred because it is not clear on the face of the Complaint when or where those claims began to accrue.  Applying Florida law, Defendant erroneously proceeds on the assumption that each of Plaintiff's claims began to accrue either when Mr. Leventhal acquired the power of attorney, on November 9, 1994, or alternatively, when Mr. and Ms. Leventhal entered into the 2004 and 2007 reverse mortgage agreements with Defendant.  Doc. 17 at 9.  Thus, Defendant concludes that Plaintiff was required to commence his fraud and negligence claims by February 2011, and the breach of contract claim no later than February 2012.  *Id*.  In contrast, Plaintiff applies New York law to conclude that its causes of action began to accrue upon Ms. Leventhal's death.  Doc. 19 at 13.  Plaintiff's understanding of when its claims began to accrue is also mistaken.

*i.    Contract Claim*

Under both New York and Florida law, a claim for breach of contract begins to accrue at the time of the breach.  *See T & N PLC v. Fred S. James & Co. of New York*, 29 F.3d 57, 59 (2d Cir. 1994) ("Under New York law, a cause of action for breach of contract accrues and the statute of limitations commences when the contract is breached.") (citation omitted); *Nyberg v. Cryo-Cell Int'l, Inc.*, No. 11 Civ. 399-T-30 (AEP), 2013 WL 5408447, at *4 (M.D. Fla. Sept. 25, 2013) ("Under Florida law, a cause of action for breach of contract accrues and the limitations period commences at the time of the breach.") (citations omitted); *see also Technical Packaging, Inc. v. Hanchett*, 992 So. 2d 309, 313 (Fla. Dist. Ct. App. 2008) ("Florida case law consistently holds that a cause of action for breach of contract accrues and the limitations period commences at the time of the breach.") (listing cases).

The Complaint provides no indication as to how Defendant breached the reverse mortgage loan agreements, let alone a date for the breaches.  Without this detail, the Court cannot decide when Plaintiff's breach of contract claim began to accrue under either New York or Florida law.  Accordingly, Defendant's argument that the cause of action is time-barred is premature and therefore fails.

*ii.    Fraud Claim*

The statute of limitation for fraud claims under New York law is "the longer of six years from the date on which the fraud occurred, or two years from discovery or the time when the plaintiff should have, with reasonable diligence, discovered the fraud."  *Gutkowski v. Steinbrenner*, 680 F. Supp. 2d 602, 615 (S.D.N.Y. 2010) (citing N.Y. C.P.L.R. 213(8)). Florida's four-year statute of limitations for fraud-based claims begins running from when the fraud was, or should have been, discovered.  *Becnel v. Deutsche Bank, AG,* 507 F. App'x 71, 73

(2d Cir. 2013) (citing Fla. Stat. § 95.031(2)(a)).  However, unlike New York, Florida requires

that a fraud claim be brought "within 12 years after the date of the commission of the alleged

fraud, *regardless of the date the fraud was or should have been discovered*."  *Kipnis v.*

*Bayerische Hypo-Und Vereinsbank, AG*, 784 F.3d 771, 779 (11th Cir. 2015) (quoting Fla. Stat.

§ 95.031(2)(a)) (internal quotation marks omitted) (emphasis added).

The Complaint alleges that Defendant defrauded Ms. Leventhal, and by extension her

estate, through its overvaluation of the Property, charging of excessive origination and closing

fees, along with its failure to verify the validity of Mr. Leventhal's power of attorney at the time

of the closings.  Compl. ¶¶ 26,-28.  It also alleges that Ms. Taylor and Ms. Aszli fraudulently

certified that they conducted loan interviews.  *Id*. ¶¶ 17, 22.  In its opposition papers, Plaintiff

maintains Ms. Leventhal did not discover the alleged tortious acts and was incapable of

comprehending them even if she had.  Doc. 19 at 15.  Defendant counters that Mr. Bernstein held

a General Power of Attorney to act on Ms. Leventhal's behalf as of July 20, 1992 and discovered

the alleged fraud in 2007.  Doc. 20 at 7.

Indeed, on various occasions Mr. Bernstein has admitted to the Court that he learned of

the two reverse mortgage agreements in 2007.  *See* Doc. 19 at 15.  However, the Complaint itself

does not establish any facts concerning Mr. Bernstein.  Furthermore, it is not clear what effect, if

any, Mr. Leventhal's appointment as an attorney-in-fact two years later had on Mr. Bernstein's

powers.  *See* Napierala Decl., Doc. 21, Ex. 2.  The 1992 power of attorney document itself,

which is partially illegible, does not clearly establish that Mr. Bernstein could have brought an

action on Ms. Leventhal's behalf.[13]  Regardless, the Complaint itself is silent as to when Plaintiff—either personally or through a legal representative—discovered or could have discovered the alleged fraudulent acts.  Since the statute of limitations defense does not appear on the face of the complaint, the Court will not dismiss Plaintiff's fraud claim on that basis.

Even though Florida places a cap of twelve years on fraud claims from the date the fraud was committed, *see* Fla. Stat. § 95.031(2)(a), it is inapplicable here.  The execution of the 1994 power of attorney document is the only event alleged in the Complaint that took place more than twelve years prior to the filing of this action.  The Complaint does not claim that Defendant had anything to do with the execution of the document; it merely faults Defendant for failing to confirm its validity at the time of the closings.  Compl. ¶ 28.  The next event alleged in the Complaint did not take place until July 23, 2004, when Mr. and Ms. Leventhal entered into their first reverse mortgage loan agreement with Defendant—approximately ten years before Plaintiff filed the instant action.  *Id*. ¶ 8.

### iii.  *Negligence Claim*

An identical issue arises when determining whether Plaintiff's negligence claim is time-barred.  Under New York law, "a negligence claim accrues on the date of the injury."  *Ruso v. Morrison*, 695 F. Supp. 2d 33, 44 (S.D.N.Y. 2010) (citation omitted).  Similarly, under Florida law, a negligence claim starts accruing "when the last element constituting the cause of action

---

[13] Using separate subdivisions, the 1992 power of attorney lists a number of matters in which Mr. Bernstein, as attorney-in-fact, may represent Ms. Leventhal.  *See* Napierala Decl., Doc. 21, Ex. 2.  The document requires Ms. Leventhal to draw a line through the text *and* initial in the box next to any subdivision concerning a matter as to which she does *not* wish to the give Mr. Bernstein authority.  *Id*.  Ms. Leventhal did not strike out any subdivision; however, there are several indecipherable markings next to multiple subdivisions.  *See id*.  It is unclear whether Ms. Leventhal meant to cross out these matters, which do not include "claims and litigation," or limit Mr. Bernstein's authority to only those matters.

occurs." *Lehman Bros. Holdings Inc. v. Phillips*, 569 F. App'x 814, 816-17 (11th Cir. 2014) (quoting Fla. Stat. § 95.031(1)) (internal quotation marks omitted).  Specifically, the last element of a negligence cause of action is actual loss or damage.  *Id.* (citing *Clay Elec. Coop., Inc. v. Johnson*, 873 So.2d 1182, 1185 (Fla. 2003)).

The Complaint alleges that Defendant acted negligently "in connection with the reverse mortgage transactions."  Compl. ¶ 18.  Specifically, it cites the January 8, 2007 interview that Defendant arranged with Mr. and Ms. Leventhal, at which the person conducting the interview should have determined that Ms. Leventhal was not competent.  *Id.* ¶ 17.  The Complaint also maintains that Defendant did not exercise reasonable care, as evidenced by its failure to comply with federal regulations, determine Ms. Leventhal was incompetent, and discover that the power of attorney was invalid.  *Id.* ¶ 18.  Yet, at no point does the Complaint allege that Plaintiff was injured as a result of the purported negligence, nor is there any indication as to when such a loss would have taken place.  Since a statute of limitations defense does not appear on the face of the Complaint, Defendant's motion is denied.

### D.  Breach of Contract

Under traditional New York choice-of-law rules, absent fraud or a violation of public policy, courts will uphold a choice-of-law clause so long as the state selected has sufficient contacts with the transaction.  *Int'l Minerals & Res., S.A. v. Pappas, et al.*, 96 F.3d 586, 592 (2d Cir. 1996) (quoting *Klitzman v. Bache Halsey Stuart Shields, Inc.*, No. 79 Civ. 6249 (JFK), 1985 WL 1984, at *2 (S.D.N.Y. June 27, 1985)).  Both of the reverse mortgage agreements contain identical provisions stating that they shall be governed by federal law and the "law of the jurisdiction in which the Property is located."  Napierala Decl., Doc. 18, Ex. 8 at ¶ 13; Ex. 9 at

16

¶ 13.   The reverse mortgage loans were notarized by Florida notary publics and recorded in Miami-Dade County, Florida.  Napierala Decl., Doc. 18, Ex. 8 at ¶ 13; *id*., Ex. 9 at ¶ 13.  This, together with the fact that the Property itself is located in Florida, provides sufficient contacts to warrant the application of Florida law in accordance with the choice-of-law provision in the agreements.

The elements of a breach of contract claim under Florida law consist of: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach."[14]  *Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. New York Life Ins. Co*., 985 So. 2d 56, 58 (Fla. Dist. Ct. App. 2008)); *see also Anwar v. Fairfield Greenwich Ltd*., 831 F. Supp. 2d 787, 794 (S.D.N.Y. 2011) *aff'd sub nom. Pujals v. Standard Chartered Bank*, 533 F. App'x 7 (2d Cir. 2013) (applying Florida contract law).  In turn, "[t]o prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms."  *Id*. (citing *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)).

Plaintiff fails to allege a single element of a breach of contract claim.  First, although the Complaint acknowledges that two reverse mortgage loan agreements exist, it maintains that they are invalid.  Compl. ¶ 33.  Specifically, it claims that Ms. Leventhal was incompetent and could not have understood or accepted Defendant's offer to enter into a reverse loan mortgage agreement.  *Id*. ¶ 14.  It also maintains that the power of attorney was invalid, which suggests

---

[14] Plaintiff argues that the Court should not rely on a choice-of-law provision contained in "an invalid mortgage." Doc. 19 at 7.  However, if the reverse mortgage agreements are invalid, Plaintiff cannot simultaneously seek to enforce them through a breach of contract claim.  In any event, the Court notes that the elements of a breach of contract claim pursuant to New York law are identical.  Under New York law, a breach of contract consists of: "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *McAnaney v. Astoria Fin. Corp*., 665 F. Supp. 2d 132, 170 (E.D.N.Y. 2009) (quoting *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994)) (internal quotation marks omitted).

that Mr. Leventhal did not have the authority to accept Defendant's offer on behalf of Ms. Leventhal.  *Id.* ¶¶ 9, 11, 25, 33.  Second, Plaintiff does not cite a single term of the reverse mortgage agreements that Defendant has failed to comply with.[15]  Lastly, the Complaint fails to allege any injury, de minimis or otherwise, that Plaintiff suffered as a result of the breach.[16]

Plaintiff's action is premised on the presumption that Ms. Leventhal was incapable of agreeing to the terms of the reverse mortgage agreements and that the power of attorney that Mr. Leventhal invoked to bind her to the contracts is invalid.  Since this runs counter to the essential requirements of offer and acceptance, any amendment to the breach of contract claim would be futile.  Therefore, the breach of contract claim is dismissed, with prejudice.  *See LaVoice v. UBS Fin. Servs., Inc.*, No. 11 Civ. 2308 (KMW) (JLC), 2013 WL 5380759, at *3 n.6 (S.D.N.Y. Sept. 26, 2013) ("A court [ ] has discretion to dismiss with prejudice if it believes that amendment would be futile or would unnecessarily expend judicial resources.") (internal quotation marks and citation omitted) (alteration in original).

### E.  Fraud

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's

---

[15] In its opposition papers, Plaintiff claims that Defendant breached the reverse mortgage agreement by failing to comply with federal regulations.  Doc. 19 at 19.  However, Plaintiff does not identify any term in the agreements requiring Defendant to abide by any unspecified regulations.  Plaintiff also alleges in its papers that Defendant breached the implied covenant of good faith and fair dealing.  *Id.*  This allegation appears nowhere in the Complaint and therefore the Court will not consider it.  *See Ifill v. New York State Court Officers Ass'n*, 655 F. Supp. 2d 382, 393 (S.D.N.Y. 2009) ("[The plaintiff] may not amend his complaint to add new claims by raising them for the first time in his motion papers.") (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)).

[16] Although the Complaint seeks damages in the amount of $329,000 in connection with the breach of contract claim, it does not specify how the damages were calculated or establish a causal connection between the amount and the alleged breach.  *See* Compl. ¶ 38.  The Complaint does not mention Defendant's foreclosure action or otherwise detail the potential damage that such a proceeding would inflict on Plaintiff.

mind may be alleged generally."  Fed. R. Civ. P. 9(b).  The Second Circuit "has read Rule 9(b) to require that a complaint '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

The elements of fraud are essentially the same under both New York and Florida law, except Florida law uses "slightly different wording and numbering."[17]  *AHW Inv. P'ship v. Citigroup Inc.*, 980 F. Supp. 2d 510, 519 n.6 (S.D.N.Y. 2013) (citation omitted).  Under New York law, a fraud claim consists of:  "(1) a misrepresentation or an omission of material fact which was false and known to be false by the defendant, (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it, (3) justifiable reliance of the plaintiff on the misrepresentation or material omission, and (4) injury."  *Longview Equity Fund, L.P. v. iWorld Projects & Sys., Inc.*, No. 05 Civ. 6745 (RJS), 2008 WL 833230, at *8 (S.D.N.Y. Mar. 26, 2008) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 147 n.5 (2d Cir. 2007)) (internal quotation marks omitted).  The elements of fraud under Florida law are: "(1) a false statement concerning a specific material fact; (2) a showing that the representor knew or should have known that the representation was false; (3) an intent that the representation induce another to act on it; and (4) consequent injury to the party acting in justifiable reliance on the representation."  *Longview Equity Fund, L.P. v. iWorld Projects & Sys., Inc.*, No. 05 Civ. 6745 (RJS), 2008 WL 833230, at

---

[17] Although it is not necessary for the Court to decide which law governs, it notes that New York courts are reluctant to construe choice-of-law provisions broadly to encompass non-contractual claims.  *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 334-35 (2d Cir. 2005).

*8 n.3 (S.D.N.Y. Mar. 26, 2008) (quoting *Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1176-77 (11th Cir. 1994)) (internal quotation marks omitted).

The Complaint fails to state a claim for fraud. It does not claim that Defendant made any false statements, misrepresentations, or omissions of fact. At most, the Complaint states, in wholly conclusory terms, that Defendant's overvaluation of the Property and fees were fraudulent, Ms. Taylor fraudulently certified that she conducted an in-person interview with Mr. and Mrs. Leventhal, and Ms. Aszli fraudulently certified that she conducted a telephone interview.[18]  Compl. ¶¶ 17, 22, 26, 27. As to the overvaluation of the Property, there is no indication as to when or where Defendant communicated the appraisal amount to Plaintiff, if at all. Even if the Court were to infer that the appraisal formed the basis for the reverse mortgage principal amount, the Complaint does not allege that Defendant possessed the intent to defraud Plaintiff. Assuming Plaintiff was capable of relying on the appraisal amount, the Complaint does not allege any facts that would render that reliance justifiable. With respect to Ms. Aszli and Ms. Taylor's certifications, the Complaint does not allege that they represented Defendant or possessed any intent to defraud Plaintiff. It is not even clear whom Ms. Aszli certified that she conducted a telephone interview with. Moreover, the Complaint does not specify whether Plaintiff suffered an injury as a result of the three alleged fraudulent acts.

---

[18] To the extent that Plaintiff claims that Mr. Leventhal fraudulently acquired the power of attorney, Defendant cannot be held responsible for Mr. Leventhal's alleged fraud.

Defendant asks that the Court dismiss all of Plaintiff's claims with prejudice.[19]  Doc. 17 at 1.  However, since Plaintiff has not had a prior opportunity to amend and it is possible that it can plead additional facts to support its fraud claim, it is dismissed without prejudice.

## F. Negligence

Under New York law, a negligence claim consists of three elements:  "(1) the defendant owed the plaintiff a cognizable duty of care as a matter of law; (2) the defendant breached that duty; and (3) plaintiff suffered damage as a proximate result of that breach."  *Millennium Partners, L.P. v. U.S. Bank Nat. Ass'n*, No. 12 Civ. 7581 (HB), 2013 WL 1655990, at *4 (S.D.N.Y. Apr. 17, 2013) (quoting *McCarthy v. Olin Corp.*, 119 F.3d 148, 156 (2d Cir. 1997)) (internal quotation marks omitted).  Once again, the elements of a negligence claim are identical under Florida law.  *See Lambert v. United States*, 198 F. App'x 835, 838 (11th Cir. 2006) ("To state a claim for negligence under Florida law, a plaintiff must allege that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach caused the plaintiff to suffer damages.") (internal quotation marks and citation omitted); *see also In re Fosamax Products Liab. Litig.*, 742 F. Supp. 2d 460, 470 (S.D.N.Y. 2010) (citing the elements of

---

[19] Defendant also suggests that the Court should dismiss the Complaint with prejudice because of Plaintiff's failure to abide by Local Rules 7.1(a)(2) and (3).  Doc. 20 at 3.  Local Rules 7.1(a)(2) and (3) require all motions and oppositions to include "a memorandum of law, setting forth the cases and other authorities relied upon in support of the motion and "[s]upporting affidavits and exhibits thereto containing any factual information and portions of the record necessary for the decision of the motion."  Although Plaintiff's opposition papers are far from perfect, they are not so lacking as to justify automatically granting Defendant's motion to dismiss.  *See Castro v. Metro. Transp. Auth.*, No. 05 Civ. 6467 (RJH), 2006 WL 2597848, at *1 n.3 (S.D.N.Y. Sept. 11, 2006) (noting that "plaintiff's failure to submit *any* opposition papers or respond in *any way* provides sufficient grounds in and of itself to grant defendant's motion to dismiss" under Local Rule 7.1) (emphasis added); *Vargas v. Boston Chicken, Inc.*, 269 F. Supp. 2d 92, 98 (E.D.N.Y. 2003) (dismissing cross-claims under Rule 7.1 because the defendant failed to submit opposition papers).  The unsupported allegations contained therein will not be considered, nor would they otherwise have any bearing on the outcome of Defendant's motion.

a negligence claim under Florida law).

Defendant argues that Plaintiff's negligence claim fails because, as a lender, it did not owe Plaintiff, a borrower, any special duties of care. Doc. 17 at 14. Indeed, "[i]t is well settled under New York law that a lender is not in a fiduciary relationship with a borrower, and thus a lender does not owe a borrower any special duties." *Abraham v. Am. Home Mortgage Servicing, Inc.*, 947 F. Supp. 2d 222, 236 (E.D.N.Y. 2013) (listing cases). Similarly, under Florida law, "[t]he general rule is that the relationship between a bank and its borrower is that of a creditor-debtor and that a bank owes the borrower no fiduciary duty." *Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d 1330, 1338 (S.D. Fla. 2011) *aff'd*, 483 F. App'x 568 (11th Cir. 2012) (citing *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1226 n.13 (11th Cir. 2002)). In fact, in applying Florida law, one district court in the Southern District of Florida dismissed a negligence claim brought by a mortgagor against her loan servicer, reasoning that "there is no tort duty to process loans competently" and that "[t]he relationship is contractual; there is either a breach of that contract or not."[20] *Id.* at 1339.

Ms. Leventhal was certainly no ordinary borrower. According to the Complaint, she was incapable of communicating and her comprehension skills were severely impaired. However, her situation does not trigger any recognized exceptions to the general rule that lenders do not owe borrowers special duties. *See Silver*, 760 F. Supp. 2d at 1338 ("Under special circumstances . . . a bank may owe a duty to disclose certain material information peculiarly within its knowledge, and not otherwise available to the customer [under Florida law].") (internal quotation marks and citation omitted); *Roswell Capital Partners LLC v. Alternative Const. Technologie*s,

---

[20] As previously determined in this Opinion, Plaintiff also failed to state a claim for breach of contract. *See* supra Part III.D.

638 F. Supp. 2d 360, 368-69 (S.D.N.Y. 2009) ("A lender-borrower relationship may give rise to fiduciary duty under New York law where there exists 'a confidence reposed which invests the person trusted with an advantage in treating with the person so confiding, or an assumption of control and responsibility.'") (quoting *Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 318 (2d Cir. 1993)).

More importantly, Mr. Leventhal executed the reverse mortgage agreements on behalf of Ms. Leventhal, pursuant to a power of attorney, which Defendant reasonably relied on.  Thus, even assuming that Defendant owed Plaintiff a duty of care under the circumstances alleged, Plaintiff cannot establish that Defendant breached any such duty.  Defendant was entitled to rely on the power of attorney, as nothing in the Complaint suggests that Defendant acted in bad faith or had actual knowledge that Ms. Leventhal lacked the capacity to execute it at the time she executed it.[21]  *See Sanford v. TIAA-CREF Individual & Institutional Servs., LLC*, No. 14 Civ. 1496, 2015 WL 1881396, at *2 (2d Cir. Apr. 27, 2015) ("Under New York law, which both parties agree governs the agency relationships at issue in this case, a third party may rely on a power-of-attorney unless it has 'actual knowledge that the principal lacked capacity to execute' the power-of-attorney.") (quoting N.Y. Gen. Oblig. Law § 5-1504(3)); Fla. Stat. § 709.2119(1)(a) ("A third person who in good faith accepts a power of attorney that appears to be executed in the manner required by law at the time of its execution may rely upon the power of attorney and the actions of the agent which are reasonably within the scope of the agent's

---

[21] In its opposition papers, Plaintiff argues that the fact that the power of attorney only contained Ms. Leventhal's initials should have raised "a big red flag" for Defendant.  Doc. 19 at 8.  Plaintiff does not cite any legal authority in support of its argument that Defendant should have done more to verify the power of attorney.  Moreover, it bears noting that, under New York law, "[p]hysical incapacity would not prevent one from validly executing a power of attorney by making a 'mark' or by signing with the assistance of another."  *Keys v. Eastman Kodak Co.*, 739 F. Supp. 135, 136 (W.D.N.Y.) *aff'd*, 923 F.2d 844 (2d Cir. 1990) (citations omitted).

authority).[22]

Not only does the Complaint fail to establish the existence of a duty of care breached by Defendant, it also neglects to allege that Plaintiff suffered any damages as a result of Defendant's purported negligence.  Given that borrowers do not owe lenders any special duties under both Florida and New York law, together with the fact that third parties may generally rely on a power of attorney, any amendment to Plaintiff's negligence claim would be futile.  Therefore, it is dismissed, with prejudice.

### G. Miscellaneous Claims

The Complaint alleges, several times, that Defendant violated numerous federal regulations, primarily in connection with the December 12, 2006 and January 8, 2007 interviews.  *See* Compl. ¶¶ 11, 12, 18, 20-21, 22, 36.  The only statute identified by Plaintiff is "[s]ection 255 of the National Housing Act and the regulations under 24 CFR [§] 206.41."  *Id*.  ¶¶ 13, 22.  In its opposition papers, Plaintiff claims that Defendant also violated New York General Business Law § 349.  Doc. 19 at 17.  However, since the Complaint itself makes no mention of the statute and Plaintiff has not otherwise sought leave to amend, it will not consider this additional claim.[23]

---

[22] In 2011, Florida Statute § 709.2119(1)(a) repealed and replaced § 709.08(4)(a), which stated:

> Any third party may rely upon the authority granted in a durable power of attorney that is not conditioned on the principal's lack of capacity to manage property until the third party has received notice as provided in subsection (5). A third party may, but need not, require the attorney in fact to execute an affidavit pursuant to paragraph

*See Deutsche Bank Nat. Trust Co. v. Prevratil*, 120 So. 3d 573, 576 n.1, 577 n.4 (Fla. Dist. Ct. App. 2013).

[23] Defendant maintains that Plaintiff cannot state a claim under § 349 because the statute only applies to transactions occurring in New York state.  Doc. 20 at 8.  Specifically, the Second Circuit has stated that "the appropriate test . . . is to focus on the location of the transaction, and in particular the strength of New York's connection to the allegedly

*See Ollie v. Domino's Pizza, Inc.*, No. 95 Civ. 10333 (LMM), 1997 WL 529049, at *1 n.1

(S.D.N.Y. Aug. 25, 1997); *see also Ifill*, 655 F. Supp. 2d at 393 (citing *Wright*, 152 F.3d at 178).

The Court construes the Complaint as alleging violations of the HECM statute, 12 U.S.C.

§ 1715z–20, and its implementing regulations, *see* 24 C.F.R. § 206, which imposes counseling

requirements in connection with reverse mortgages.[24]  *See* 12 U.S.C. § 1715z-20(d)(2)(B), (f).

Several courts within and outside the Second Circuit have held that 12 U.S.C. § 1715z–20 does

not create a private cause of action.  *See Aldi v. Wells Fargo Bank, NA*, No. 14 Civ. 00089

(WWE), 2015 WL 3650297, at *7 (D. Conn. Feb. 17, 2015) ("[T]he Court agrees with

defendants that 12 U.S.C. § 1715z-20 governs HUD's [United States Department of Housing and

Urban Development] insurance of reverse mortgages, not the independent contractual

relationship between mortgagors and mortgagees."); *Santos v. Reverse Mortgage Solutions, Inc.*,

No. 12 Civ. 3296 (SC), 2013 WL 5568384, at *6 (N.D. Cal. Oct. 9, 2013) (no private right of

action under the National Housing Act or for violations of a HUD Handbook created pursuant to

the Act); *Wiseman v. First Mariner Bank*, No. 12 Civ. 2423 (ELH), 2013 WL 5375248, at *26

(D. Md. Sept. 23, 2013) (dismissing claim where the plaintiff conceded that there is no private

right of action under 12 U.S.C. § 1715z–20, and its implementing regulations).  Therefore,

Plaintiff cannot sustain a claim under the statute.[25]

---

deceptive transaction, rather than on the residency of the parties."  *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122 (2d Cir. 2013) (internal quotation marks and citation omitted).

[24] In its opposition papers, Plaintiff clarifies that it alleges violations of 12 U.S.C. § 1715z-20(e) and (f).  Doc. 19 at 8.  Plaintiff also alleges violations of the Real Estate Settlement and Procedures Act and the Truth in Lending Act in its brief.  *Id.*  However, since the Complaint itself does not allege violations of these statutes, the Court will not consider them.  *See Ifill*, 655 F. Supp. 2d at 393 (citing *Wright*, 152 F.3d at 178).

[25] In its reply papers, Defendant argues, for the first time, that Plaintiff ratified the reverse mortgage agreements because Mr. Bernstein withdrew funds on more than one occasion from the 2007 reverse mortgage in 2009.  Doc. 20

## IV.    Conclusion

For the foregoing reasons, Defendant's motion to transfer is DENIED and its motion to dismiss is GRANTED.  All of Plaintiff's claims are dismissed with prejudice, except for the fraud claim.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 16.

If Plaintiff chooses to file an amended complaint, it shall do so by **October 9, 2015**. Failure to do so will result in the case being closed.  As noted throughout this Opinion, Plaintiff's allegations were deficient in a number of ways.  The Court also had to admonish counsel for Plaintiff on at least one occasion not to pursue frivolous claims.  Accordingly, should Plaintiff choose to file an amended complaint , counsel for Plaintiff is reminded of his professional obligations pursuant to Rule 11(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

It is SO ORDERED.

Dated:    September 25, 2015
          New York, New York

Edgardo Ramos, U.S.D.J.

---

at 6 (citing Napierala Decl., Doc. 18, Exs. 3, 5); *see also* Napierala Decl., Doc. 18, Ex. 4.  However, "it is well established that '[a]rguments may not be made for the first time in a reply brief.'"  *Levy v. Young Adult Inst., Inc.*, No. 13 Civ. 2861 (JPO), 2015 WL 1958889, at *13 (S.D.N.Y. Apr. 30, 2015) (quoting *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993)).

In addition, since the Court is dismissing all of Plaintiff's causes of action for failure to state a claim, it need not reach the issue of the availability of certain remedies.